The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
***********
The parties entered into a Form 21 Agreement in Case No. 306043 which was approved by the Commission on 8 March 1993. A Form 21 Agreement between the parties in Case No. 373712 was approved by the Commission on 10 May 1994. On 14 July 1994, defendants filed a Form 24 Application to Terminate Benefits on grounds that plaintiff unjustifiably refused to participate in the rehabilitation process. On 15 July 1994 plaintiff was ordered by the Commission to pursue prescribed medical instructions and cooperate with rehabilitation, and was given fifteen days in which to do so. On 1 August 1994 defendants' Form 24 was approved by the Commission and plaintiff's benefits were terminated.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Constitution State Service Co. is the carrier on the risk.
4. Plaintiff's average weekly wage at the time of his injuries was $328.00, yielding a compensation rate of $218.68.
5. The following medical records concerning plaintiff's injuries and treatment were stipulated into the record.
a. Hugh Chatham Memorial Hospital (1p)
b. Medical records of Dr. Paul H. Gulley (15pp)
c. Medical records of Dr. C.S. Whitman (14pp)
d. Medical records of Dr. David Kelly (2pp)
e. Medical records of Dr. Tomas Vybiral (85pp)
f. Medical records of Dr. Douglas Metcalf (7pp)
g. Medical records of Dr. Andrea Stutesman (4pp)
h. North Carolina Baptist Hospitals (19pp)
i. Medical records of Dr. Gary Poehling (8pp)
j. Agape-Onoma Psychological Center (17pp)
k. Medical records of Dr. Richard Adams (4pp)
l. Medical records of Dr. Mark Rogers (6pp)
6. The issues to be resolved are:
 a. Did plaintiff sustain injuries by accident which resulted in his developing work-related fibromyalgia on 9 November and 7 December 1992?
 b. If plaintiff's injuries are work-related, to what benefits is plaintiff entitled, if any, including medical benefits and compensation, temporary total disability, permanent total disability and/or permanent partial disability?
 c. Were defendants justified in seeking to terminate plaintiff's benefits under the Form 24 Application to Terminate Benefits?
***********
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of the hearing plaintiff was a fifty-nine year old married man living with his wife. He had been employed by defendant-employer since July 1980, and at the time of his first injury was employed as a stock mover. Just prior to his injuries he was able-bodied and worked without pain.
2. On 9 November 1992 plaintiff was pushing a stock cart loaded with wooden skids when he slipped and fell, hitting his chest and elbows on the load. Plaintiff continued to work, and reported the accident to his supervisor later that day. Over the next few days plaintiff continued to complain of pain, and he was placed on light duty work. A hospital examination a week later revealed that plaintiff suffered a fractured rib and a lower back strain. This incident constitutes a compensable work-related injury which resulted in traumatic injury to plaintiff.
3. On 7 December 1992, while plaintiff was attempting to lift a steel loading ramp, he strained his lower back. Plaintiff finished his shift, but was unable to return to work the next day. Plaintiff has not returned to work since that time in 1992. This incident constitutes a compensable work-related specific traumatic incident resulting in traumatic injury to plaintiff's back.
4. On 8 December 1992 plaintiff presented to the emergency room of Hugh Chatham Memorial Hospital complaining of lower back pain. The Hospital referred plaintiff to his family physicians, Drs. Paul L. Garrison and Paul H. Gulley. Plaintiff presented to Dr. Gulley on 10 December 1992 with lower back pain. Dr. Gulley recommended no work until 21 December 1992, then a return to work at light duty, beginning 4 January 1993.
5. On 17 December 1992 plaintiff presented to Dr. Garrison with continued lower back pain, radiating down his left leg. Dr. Garrison referred plaintiff to orthopedic surgeon, Dr. C.S. Whitman.
7. Plaintiff next presented to Dr. Whitman on 1 February 1993. There, for the first time, plaintiff complained of neck and upper extremity pain. Plaintiff related these complaints to the 9 November 1992 incident. Dr. Whitman diagnosed a probable long-standing degenerative disk disease in the cervical spine and scheduled a MRI.
8. The MRI revealed herniated disks at C5-6 and C6-7, the result of pre-existing degenerative disk problems in plaintiff's cervical spine. Dr. Whitman referred plaintiff to Dr. Mark Rogers for a determination as to the necessity of neck surgery. Dr. Rogers did not recommend neck surgery, and when plaintiff returned to Dr. Whitman on 18 May 1993, his list of complaints expanded to include bilateral knee pain.
10. On 27 July 1993 Dr. Whitman told plaintiff he would like him to present to Dr. Andrea Stutesman for an evaluation regarding attending her work hardening program. Plaintiff was evaluated by Dr. Stutesman on 8 September 1993. Dr. Stutesman diagnosed probable fibromyalgia, but recommended a work hardening program.
11. On 27 September 1993 plaintiff was admitted to Hugh Chatham Hospital with chest pains. Plaintiff was diagnosed as having high blood pressure and was discharged on 30 September 1993 by Dr. Gulley, who recommended that plaintiff resume the rehabilitation program and work hardening program recommended by Dr. Stutesman.
12. Plaintiff declined to return to the rehabilitation program. His blood pressure continued to cause him difficulty. On 4 November 1993, Dr. Whitman noted that plaintiff's blood pressure was keeping him from attending Dr. Stutesman's program, and he provided plaintiff with a release from work until his blood pressure was brought under control.
13. On 21 February 1994 plaintiff presented to rheumatologist Dr. Douglas Metcalf who diagnosed plaintiff as having fibromyalgia and degenerative cervical disk disease. As a result of plaintiff's level of pain and educational background, Dr. Metcalf believes, and the Full Commission so finds, plaintiff is totally and permanently disabled for any type of employment.
14. Plaintiff returned to Dr. Stutesman on 17 March 1994. Dr. Stutesman diagnosed fibromyalgia. She also determined that plaintiff was no longer a viable candidate for her work hardening program as he had a low tolerance for pain. According to Dr. Stutesman, without additional rehabilitation or work hardening, nothing more can be done for plaintiff. As of 17 March 1994 plaintiff had reached maximum medical improvement.
15. By 17 March 1994, plaintiff had been diagnosed by at least two physicians (Stutesman and Metcalf) who diagnosed plaintiff with fibromyalgia. Fibromyalgia is a rheumatologic disease that may be caused by trauma and is treatable but seldom curable.
16. Plaintiff's fibromyalgia was caused by his work-related, trauma induced injuries sustained respectively on 9 November 1992 and 7 December 1992. Due to the compensable injuries and resulting fibromyalgia, his age, work experience and non-work-related medical conditions that are work limiting, plaintiff was not a proper candidate for the rehabilitation efforts ordered by Dr. Stutesman.
17. The Commission's 15 July 1994 order that plaintiff pursue prescribed medical instructions and cooperate with rehabilitation and the Commission's 1 August 1994 Form 24 order terminating plaintiff's benefits were improvidently entered.
18. Dr. Gary G. Poehling, chairman of the Department of Orthopedic Surgery at Bowman Gray School of Medicine, testified on deposition that he examined and treated the plaintiff upon referral by Dr. Gulley. He found, and the Full Commission finds, that the plaintiff had fibromyalgia with impingement syndrome in his shoulders, as well as levator scapulae syndrome, which is like a tendinitis of the shoulder and goes along with people that are having problems in their shoulders, an injury to the thorax, and and an injury to his ribs, all a result of his compensable accident. He found, and the Full Commission finds, that the fibromyalgia suffered by plaintiff was a direct result of the compensable accident. He found, and the Full Commission finds, that because of his fibromyalgia and other disorders resulting from the compensable accident that the plaintiff was not a suitable candidate for a rehabilitation program, work hardening or strenuous physical therapy. He found, and the Full Commission finds, that because of plaintiff's age, educational background and work experience, that he was not currently employable.
19. The outcome of this case depends on the medical evidence. As to this, the Full Commission is in as good a position as the Deputy Commissioner since there was no live testimony by the physicians. The Full Commission finds that the evidence of Drs. Metcalf and Poehling deserves greater weight and therefore gives them greater weight in this proceeding than the other medical evidence.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 9 November and 7 December 1992, plaintiff sustained work-related injuries to his lower back while he slipped while pushing a cart loaded with wooden skids and when he attempted to lift a steel loading ramp, respectively. As a result of both plaintiff's traumatic back injuries, he developed fibromyalgia, causing him sufficient pain to prevent him from returning to work and making him not suitable for rehabilitation or strenuous physical therapy.
2. Because of plaintiff's age, educational background, work experience and compensable disabilities he is entitled to temporary total compensation at the rate of $216.68 per week.
3. The Commission's 15 July 1994 order that plaintiff pursue prescribed medical instructions and cooperate with rehabilitation and the Commission's 1 August 1994 Form 24 order terminating plaintiff's benefits were improvidently entered and must be set aside.
3. Plaintiff is entitled to compensation of $218.68 per week from the time in 1994 when his benefits were terminated or suspended and continuing, barring a change of condition, return to work, or further order of the Industrial Commission for the temporary total disability he has sustained as a result of these injuries by accident.
4. Plaintiff's attorney is entitled to reasonable attorney fees of 25% of the compensation awarded plaintiff.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $218.68 per week from the time in 1994 when his benefits were terminated or suspended and continuing, barring a change of condition, return to work, or further order of the Industrial Commission for the temporary total disability he has sustained as a result of these injuries by accident. The amount accrued to date shall be paid in a lump sum with interest at 8% per year from 24 May 1995 until paid.
2. Defendants shall provide ongoing medical treatment which may be reasonably necessary to give plaintiff relief from pain or lessen his disability and shall pay for all past medical expenses resulting from these compensable accidents.
3. A reasonable attorney's fee in the amount of 25 percent of the compensation awarded plaintiff under this opinion and award is approved for plaintiff's counsel. Twenty-five percent of the compensation accrued and due plaintiff shall be deducted and paid directly to his attorney. Thereafter, every fourth compensation check shall be sent to plaintiff's attorney.
4. Defendant shall pay the costs.
This 26th day of March, 1998.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_____________ RENEE RIGGSBEE COMMISSIONER